UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

**WORDSHONA BOXLEY**  CASE NO. 5:19-CV-00568

**VERSUS**  JUDGE TERRY A. DOUGHTY

**FAMILY DOLLAR STORES, INC., ET AL.**  MAG. JUDGE KAREN L. HAYES

RULING

Pending before the Court is the Motion to Dismiss or, in the Alternative, to Stay Proceedings Pending Arbitration ("Motion to Dismiss or to Stay") [Doc. No. 28] filed by sole remaining Defendant, Family Dollar Stores of Louisiana, Inc. ("Family Dollar"). Family Dollar moves the Court to dismiss or, alternatively, to stay Plaintiff Wordshona Boxley's ("Boxley") claims, pending the outcome of arbitration. Boxley, who is *pro se*, filed no response.

For the following reasons, the Motion to Dismiss or to Stay is **GRANTED IN PART AND DENIED IN PART.**

**I.  FACTS AND PROCEDURAL HISTORY**

Family Dollar is part of Dollar Tree, Inc., a nationwide corporation with multiple subsidiaries and retail store locations across the United States, including Louisiana. [Doc. No. 28-3, Declaration of Vincent Votta ("Votta Dec."), Ex. 1, ¶ 2].

Boxley was employed as an Assistant Store Manager at Family Dollar's Oil City, Louisiana location between November 11, 2016, and June 30, 2017. *Id.* at ¶¶ 17 & 22.

At the outset of her employment, Boxley agreed to submit any and all disputes arising from her employment to binding arbitration, pursuant to a "Mutual Agreement to Arbitrate

Claims" (the "Arbitration Agreement").  *Id.* at ¶¶ 17-21; Doc. No. 28-5 (Arbitration Agreement).

The Arbitration Agreement provides as follows:

> This is a Mutual Agreement to Arbitrate Claims ("Agreement") between the Company[1] and its associate ("Associate"). The Company and Associate are each a Party to the Agreement, and together they are the Parties to the Agreement and mutually bound by the Agreement.  The Parties recognize that disputes may arise between them during, or after the end of, Associate's employment with the Company. The Parties understand and agree that by entering into this Agreement they mutually agree to waive their right to a trial in court by a judge or jury, the Associate waives the right to participate in class or collective actions, and, in exchange, the Parties anticipate gaining the benefits of arbitration as a final and binding dispute-resolution procedure.

[Doc. No. 28-5, pp. 2-3].  The Arbitration Agreement contains a section titled "Claims Covered by the Agreement (which must be arbitrated)," which provides that is covers claims "arising out of or related to Associate's employment (or its termination)[,]" including a claim of discrimination based on a physical disability or handicap, or medical condition. *Id.* at p. 3.  In another section, titled "Claims Not Covered by the Agreement (and not subject to Arbitration)," the following excluded claims are listed:

> (1) a court action for temporary equitable relief in aid of arbitration, where available by law; (2) claims for workers' compensation or unemployment compensation benefits; (3) disputes that, as a matter of law, may not be subject to pre dispute arbitration agreements, and (4) claims that may be brought before an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate.

---

[1]As used in the Arbitration Agreement,

"The Company" or "Dollar Tree" means Dollar Tree, Inc. and any of its direct or indirect subsidiaries organized under the laws of the United States or a state or jurisdiction of the United States that employs Associate, including but not limited to Family Dollar Stores, Inc. and its subsidiaries, Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, Inc., or Greenbrier International, Inc.

   [Doc. No. 28-5, p. 6].

*Id.*

As part of her employment process, Boxley electronically signed the Arbitration Agreement by entering the last four digits of her social security number in a box provided for her electronic signature. [Doc. No. 28-3, Votta Dec., ¶¶ 18 & 19; Doc. No. 28-5, p. 7]. Once Boxley electronically signed the Arbitration Agreement, a fully executed copy of the agreement was sent to her personal email address — wordshonaboxley@yahoo.com. [Doc. No. 28-3, Votta Dec., ¶¶20 & 21; Doc. No. 28-5, p. 7; Doc. No. 28-6, November 10, 2016 email from Family Dollar to Boxley]. By acknowledging her receipt of the Arbitration Agreement via electronic signature, Boxley agreed as follows:

> . . . ASSOCIATE ACKNOWLEDGES THAT ASSOCIATE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE PARTIES RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT ASSOCIATE HAS ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY, OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
>
> ASSOCIATE FURTHER ACKNOWLEDGES THAT ASSOCIATE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH ASSOCIATE'S PRIVATE LEGAL COUNSEL AND HAS DONE SO TO THE EXTENT ASSOCIATE WISHES.
>
> ASSOCIATE UNDERSTANDS THAT ASSOCIATE IS GIVING UP THE RIGHT TO A TRIAL IN COURT WITH A JUDGE OR JURY.

[Doc. No. 28-5, p. 6 (emphasis in the original)]. Immediately above her electronic signature, Boxley further agreed:

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; [sic] WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

[Doc. No. 28-5, p. 7 (emphasis in original)].

In May and June 2017, when Boxley was in her first trimester of pregnancy, she alleges that Family Dollar discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §121112, *et seq.* She contends that the store manager, Rosie Dixie ("Dixie"), failed to accommodate her actual or perceived disability, her pregnancy, by refusing to allow her time off to attend her first doctor's appointment, even though she had requested the time off two weeks in advance. [Doc. No. 1]. She further contends that she had a high-risk pregnancy and requested that Family Dollar accommodate her by not scheduling her for double shifts or turn-around shifts and by not requiring her to lift heavy freight while she was in her first trimester. "After returning back to work from scheduled off days, two days off per doctor,[] and one day off due to [Dixie] changing the schedule [while Boxley] was out," she alleges that she was asked to "step down" from the position of cashier because she had been out for five (5) days. *Id.* Finally, she alleges that the "store manager" reduced her schedule to 27 hours per week for at least two weeks during her pregnancy, even though assistant managers are "required" to work 32 hours per week. *Id.*

On July 15, 2017, Boxley filed a charge of discrimination with the EEOC. *Id.* The EEOC issued a Notice of Right to Sue on February 28, 2019.[2] *Id.*

On April 29, 2019, Boxley filed the instant, naming as Defendants, Family Dollar Stores, Inc.; Dixie; and Meshell Turner, who was identified as Store District Manager. Following

---

[2] Boxley alleges that the Notice of Right to Sue issued on April 29, 2019, *see* [Doc. No. 1], but the Notice is attached to her Complaint and clearly provides that it issued on February 28, 2019.

multiple failed attempts to accomplish service of process, Boxley amended her lawsuit on December 16, 2019, to name Family Dollar[3] as the sole defendant. [Doc. No. 24].

Family Dollar was served through its registered agent for service of process on February 26, 2020. [Doc. No. 26].

On March 18, 2020, Family Dollar filed the instant motion. [Doc. No. 28]. The same day, March 18, 2020, the Clerk of Court issued a Notice of Motion Setting [Doc. No. 29], informing Boxley that she had fourteen (14) days from the date of the notice to file a memorandum in opposition to the Motion to Dismiss or to Stay. However, Boxley has not filed any opposition, nor has she filed a motion requesting an extension of time to respond. Accordingly, the motion is now ripe.

## II.   LAW AND ANALYSIS

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA"), is the substantive law controlling the validity and enforcement of arbitration agreements. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002). The FAA provides that written agreements to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Walton*, 298 F.3d at 473. Additionally, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. However, the FAA also has a "saving clause

---

[3]Family Dollar Stores of Louisiana, Inc., is a subsidiary of Family Dollar, Inc. and Family Dollar Holdings, Inc., both of which are wholly-owned subsidiaries of Family Dollar Stores, Inc. Family Dollar Stores, Inc., is a subsidiary of Dollar Tree, Inc. [Doc. No. 28-3, Votta Dec., ¶ 2].

[that] allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting § 2). "The clause 'permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *ATT Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Courts consider two factors in ruling on a motion to compel arbitration: "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Painewebber Inc. v. Chase Manhattan Private Bank (Switz.),* 260 F.3d 453, 462 (5th Cir. 2001) (internal quotation marks and citation omitted); *see also Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014) (quoting *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)); *see also* 9 U.S.C. § 4.

**A. Was There an Agreement to Arbitrate?**

"The first step of the analysis—the validity of an agreement—is governed by state law contract principles." *Sharpe*, 769 F.3d at 914 (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Under Louisiana law, parties may reciprocally bind themselves to arbitration agreements. LA CIV. CODE ANN. ARTS. 3099–3100 (2015). Such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." LA. STAT. ANN. § 9:4201 (2009).

It is undisputed[4] that Boxley electronically signed the Arbitration Agreement; that Boxley received a copy of the Arbitration Agreement which was sent via email to her personal email address; that Boxley began and continued her employment after receipt of the Agreement to Arbitrate; and that Boxley failed to raise any objections to the Arbitration Agreement.

The Court finds that Boxley entered into an arbitration agreement with Family Dollar based on the undisputed facts. Whether the Arbitration Agreement is a valid agreement "is simply a matter of contract between the parties" that is "governed by ordinary state-law contract principals." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). Under the Louisiana Civil Code, individuals may freely contract. LA. CIV. CODE ART. 1971. A contract is formed by the consent of the parties established through offer and acceptance. LA. CIV. CODE ART. 1927. When a contract is unambiguous and internally consistent on its face, interpretation of the contract remains within the "four corners" of the written documents. *In re Cajun Elec. Power Co-op, Inc.*, 791 F.2d 353, 359 (5th Cir. 1986) (citing *Chevron U.S.A., Inc. v. Belco Petroleum Corp.*, 755 F.2d 1151, 1153-54 (5th Cir. 1985) ("Under Louisiana's four-corners rule [. . .] the fact that both parties signed an explicit, unambiguous contract is conclusive evidence of their mutual intent."). In this case, there is every indication that the parties had capacity to contract; there was mutual consent; [5]there was an object (the terms of employment, including

---

[4]As Boxley has failed to respond to the instant motion, she has failed to challenge any of the properly supported facts.

[5] Even if Boxley's electronic signature were insufficient to show express written acceptance, her continued employment after receipt of the Arbitration Agreement has been deemed sufficient to constitute acceptance under Louisiana law. *See Marino v. Dillard's, Inc.*, 413 F.3d 530, 532–33 (5th Cir. 2005). The *Marino* Court explained:

> . . . Louisiana state courts recognize that contract law does not require written acceptance of an arbitration agreement. For example, in *Hurley v. Fox*, the Louisiana Court of Appeal held that the Louisiana state arbitration law—which

arbitration of related disputes); and there was a lawful purpose. *See* LA. CIV. CODE ARTS. 1918, 1927, 1966, and 1971.

If there is an enforceable contract, then the Court must ascertain the parties' intent. "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself[.]" *Prejean v. Guillory,* 38 So.3d 274, 279 (La. 2010). When a contract's terms are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LA. CIV. CODE ART. 2046.

In this case, the Court finds, under Louisiana law, there was a valid, enforceable contract in which the parties agreed to arbitrate the identified claims, and the Court must enforce the Arbitration Agreement according to its plain language.

---

tracks the language of the FAA and, like the FAA, requires arbitration agreements to be in writing—"does not require that the written agreement to arbitrate be signed by the parties." 520 So.2d 467, 467 (La. Ct. App. 4 Cir. 2/10/88) (citing *Cook v. AAA Worldwide Travel Agency*, 352 So.2d 243 (La. Ct. App. 4 Cir. 9/8/77), rev'd on other grounds, 360 So.2d 839 (La.1978)). The court found it "necessary ... to distinguish between the requirement that an agreement be in writing and the requirement that an agreement be signed. An agreement may be written and the consent thereto may be made orally or by the action or inaction of the parties, thus no signing of the writing is required." *Id.* at 469 (emphasis added). *See also Alford v. Johnson Rice & Co*., LLC, 773 So.2d 255, 258 (La. App. 4 Cir. 11/15/00) (concluding that an arbitration agreement governed by the FAA does not have to be signed); *In re Succession of Taravella,* 734 So.2d 149, 151 (La. App. 5 Cir. 4/27/99) ("When an agreement [to arbitrate] lacks a signature, the actions and the conduct of the party or parties, who did not sign, may show the effect or validity of the agreement.").

413 F.3d at 532-33. The Marino Court further acknowledged that "Comment (b) to Article 1927 . . . . 'reflects the view of the Louisiana jurisprudence that when special formalities are prescribed for a contract the same formalities are required for an offer or acceptance intended to form that contract.'" *Id*. (quoting LA. CIV. CODE ART. 1927, cmt. (b)). The Fifth Circuit then pointed out that "[t]he plain language of Article 1927, however, permits offer and acceptance to be made orally, in writing, or by action or inaction unless the law or the offer itself prescribes certain formalities for the offer and acceptance of a specific contract." *Id.*

**B. Are Boxley's ADA Claims within the Scope of the Arbitration Agreement?**

Although there is some overlap, the Court now turns to the second part of the analysis: whether Boxley's ADA claims are within the scope of the Arbitration Agreement. The Court finds that they are.

As discussed above, the Arbitration Agreement provides:

> The Parties agree to the resolution by arbitration of all claims or controversies ('claims'), past, present, or future, that can be raised under applicable federal, state, or local law, **arising out of or related to Associate's employment (or its termination)**, that the Company may have against Associate or that the Associate may have against any of the following: (1) The Company ...

. . . .

> Claims subject to arbitration include, but are not limited to, claims for: . . . retaliation or discrimination (**including**, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, **physical or mental disability or handicap**, or medical condition). . .

[Doc. No. 28-5, p. 3 (emphasis added)].

The disability discrimination claim asserted by Boxley, based on her pregnancy, clearly arises out of her employment with Family Dollar and is subject to mandatory arbitration pursuant to the Arbitration Agreement. Additionally, while the Arbitration Agreement also sets forth certain excluded claims, none of the exclusions apply here. Thus, the Court finds that Boxley's claims are within the scope of the Arbitration Agreement.

**C. Administrative Closure**

Having found that Boxley was subject to the Arbitration Agreement and that her claims are within the scope of that agreement, the Court turns to Family Dollar's alternative arguments that this lawsuit should be dismissed or stayed pending the outcome of arbitration.

Where a court finds that all, rather than some or part, of a plaintiff's claims are subject to arbitration, there is some case law suggesting that the claims should be dismissed with prejudice, rather than stayed pending arbitration. *See Ruiz v. Donahoe*, 784 F.3d 247, 250 n.3 (5th Cir. 2015); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, as a sister court has pointed out, the precedent is not that clear. *See Hanberry v. First Premier Bank*, Civil Action No. 19-10235, 2019 WL 4415267 at *7 (E.D. La. 9/16/19). Rather, the Fifth Circuit later clarified *Alford* in *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307 (5th Cir. 2003), stating: "*Alford* merely held that dismissal was not an abuse of discretion," but that it "did not hold that dismissal was required." *Id.* at 310-11; *Hanberry*, 2019 WL 4415267 at *7 (quoting same).

In this case, the Court finds that a third option is appropriate: administrative closure. Under 9 U.S.C. § 3,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

(emphasis added). The Court may be called upon to consider a conflict of law or to enforce, confirm, modify or vacate the arbitrator's award. In light of all these considerations, the Court finds that administrative closure is appropriate, removing this case from the Court's active docket, but providing the parties an opportunity to move to re-open the case if prudent or necessary. *See Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; i.e., administratively closed cases are not

counted as active" . . . .This case still exists on the docket of the district court and may be reopened upon request of the parties or on the court's own motion. That situation is the functional equivalent of a stay, not a dismissal, and is thus not an appealable order under the FAA.").

### III. CONCLUSION

For these reasons, Family Dollar's Motion to Dismiss or to Stay [Doc. No. 28] is **GRANTED IN PART and DENIED IN PART**. To the extent that Family Dollar moves to compel arbitration of Boxley's claims on the basis of the Arbitration Agreement, the motion is **GRANTED**. To the extent that Family Dollar moves for dismissal of Boxley's claims with prejudice or, alternatively, for stay of these proceedings, the motion is **DENIED**. The Clerk of Court will be **ORDERED** to administratively terminate this action in his records, without prejudice to the right of the parties to reopen the proceedings. All pending deadlines and motions will be terminated, to be re-urged by counsel when the time is right. This closure shall not be considered a dismissal of this matter, and should further proceedings in it become necessary or desirable, any party may initiate it in the same manner as if this portion of the Court's Judgment had not been entered.

MONROE, LOUISIANA, this 1st day of May, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**